# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3239

_____

Jackie Lackie,

*Plaintiff - Appellant,*

v.

Eric M. Noe, Colonel, in his official capacity as District Engineer, Little Rock
District, U.S. Army Corps of Engineers; United States Army Corps of Engineers;
United States Department of the Army,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: November 20, 2025
Filed: July 13, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

_____

COLLOTON, Chief Judge.

   In 2022, sixty-nine trees were cut down on government land between Jackie
Lackie's property and Greers Ferry Lake. The Army Corps of Engineers believed that
Lackie cut the trees, so the Corps sent a letter informing Lackie that he would face

legal action if he did not pay for the damage. The letter also informed Lackie that the Corps intended to revoke his shoreline use permit. Enclosed with the letter was a proposed settlement and memorandum of agreement that by its terms would settle "all known disputes" between the parties. Lackie signed the settlement agreement and paid the requested sum. The next month, the Corps revoked his shoreline use permit. Lackie sued and alleged that the Corps's decision was arbitrary and capricious because it breached the settlement agreement. The district court affirmed the Corps's decision to revoke the permit. Lackie appeals, and we reverse.

I.

Greers Ferry Lake lies south of the Boston Mountains in north central Arkansas. In 1962, the Army Corps of Engineers completed construction of the Greers Ferry Dam, a flood control dam and hydroelectric power plant. The dam formed a reservoir, known today as Greers Ferry Lake. The lake is a premier fishing destination known for its clean water and diverse fish populations.

The lake is owned by the federal government, and the Army Corps of Engineers manages the lake and its shoreline. To protect natural environmental conditions and promote safe use of the lake, the Corps administers a shoreline management plan that governs use of the private shoreline and lake. Under the plan, a property owner must obtain a permit to maintain a boat dock on the lake or to modify vegetation on the public land surrounding the lake and its shoreline.

In 2001, Lackie purchased property near the lake. The property included a pre-existing boat dock that had been authorized under a permit since 1974. Lackie obtained this permit when he purchased the property, and the permit was reissued in 2004, 2010, 2015, and 2019. The permit allows Lackie to maintain the dock for recreational use and to cross federally-owned land to access the lake.

In January 2022, park rangers discovered that sixty-nine trees had been cut down on government land between Lackie's property and the lake. The damaged trees were adjacent to Lackie's property, and the Corps inferred that Lackie had felled the trees. The Corps filed a notice of trespass against Lackie's property in the real estate records of Cleburne County.

On April 8, 2022, a deputy operations project manager for the Corps sent Lackie a letter about the trees. He informed Lackie that the destruction of trees on public land was a violation of the shoreline management plan and a federal regulation that forbids the cutting of trees on public property without written permission of the District Commander. *See* 36 C.F.R. §§ 327.14(a) and (b). The letter offered to settle the regulatory violation if Lackie paid the appraised value of the damaged trees, in the amount of $6,017.28:

> We are offering you the option of paying this amount to avoid a court appearance. If you agree with the contents, you may sign the enclosed Memorandum of Agreement and return it to this office within 10 days of receipt of this letter.

The next paragraph informed Lackie that the Corps was designating the damaged area as a "restoration area" that would be inaccessible for a period so that it could naturally restore itself to the pre-damaged state. The letter continued:

> We are also recommending the Little Rock District Commander revoke your shoreline use permit 4121 for the dock and path. If the permit is revoked, removal of the boat dock will be required. Once the dock is removed from Greers Ferry Lake this office will not entertain any future requests for a dock at this location, since the area where your path and dock are located is not zoned as Limited Development Area.

The letter informed Lackie that the Corps had filed a notice of trespass against his property, and that the notice could be revoked after the violation was resolved.

Enclosed with the letter was a proposed settlement and memorandum agreement that read as follows:

The Corps wants a long-term solution to this encroachment on public lands. Mr. Lackie admits responsibility for cutting or destroying vegetation on public property. *The parties want to settle this case concerning all matters on the public lands.*

Therefore, the Parties agree to the following:

1. As compensation to the Corps for the damage done in the past, Mr. Lackie agrees to pay the Government $6,017.28 (appraised value for the cut trees) to avoid a court hearing.

2. The entire affected area bounded by Mr. Lackie's property on one side and Greers Ferry Lake on the other side shall be designated as a restoration area for an indefinite period to begin on the date this agreement is signed. No permits will be allowed in this restoration area during the period of restoration, in order to allow the property to return to its natural state.

3. The Corps will place a "RESTORATION AREA" sign on public property adjacent to Mr. Lackie's property.

4. Mr. Lackie agrees to cease and refrain from future unauthorized activities on public property.

5. Mr. Lackie agrees to allow Corps personnel and/or contractors to access the public shoreline across his property for the purpose of planting and/or maintaining vegetation adjacent to his property.

6. *All the parties agree that this agreement settles all known disputes between the Corps of Engineers and the landowner, Mr. Lackie, as of the date signed.*

7. Upon receipt of this signed agreement and payment of $6,017.28, Mr. Rorie (Operations Project Manager) agrees to initiate action to revoke the Notice of Trespass filed in the Cleburne County Courthouse.

8. Upon signing of this agreement, it shall be effective.

R. Doc. 26-1 (emphases added).

Five days later, Lackie called a park ranger to discuss the letter and the proposed settlement. Lackie denied responsibility for cutting down the trees but agreed to pay the requested settlement amount to remove the notice of trespass from his property. Lackie also asked whether his shoreline use permit would be revoked. The park ranger informed Lackie only that revocation was a lengthy process. Lackie explained that he did not want to lose the dock and offered to pay double the requested amount in order to keep it.

A week after the phone call, Lackie visited the Corps's project office to drop off the signed settlement agreement and a check for $6,017.28. Lackie asked the park ranger whether there would be any other penalties. The ranger explained that the payment resolved any citations, but revocation of the permit was still a possibility. Lackie left a signed copy of the settlement agreement and the payment.

On May 1, 2022, Eric Noe, District Commander for the Corps's Little Rock District, notified Lackie by letter that his permit would be revoked due to violations of the conditions of the permit. Lackie appealed the decision, and the Corps held an informal hearing on June 27, 2022. Two days after the hearing, Lackie sent an alternative mitigation proposal to the Corps to avoid revocation of the permit. Lackie offered to donate $12,000 to sponsor a Greers Ferry Lake shoreline management awareness campaign, and to pay $20,000 for shoreline management and habitat creation on the lake. The Corps rejected Lackie's proposal, and the District Commander issued a final decision revoking the permit.

Lackie sued the District Commander in the district court. He sought judicial review of the revocation under the Administrative Procedure Act, 5 U.S.C. § 706. Lackie argued that revocation of his permit violated the terms of the settlement agreement, because the agreement settled "all known disputes" between the parties, and the Corps did not reserve the right to revoke his shoreline use permit after the agreement was executed.

The district court affirmed the decision of the Corps to revoke the permit. The court ruled that the letter of April 8 that was enclosed with the settlement agreement made clear that "the issue of whether Lackie's permit would be revoked was not resolved" by the settlement agreement, so the Corps could revoke the permit without violating the agreement.

Under the APA, a reviewing court will set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(a). We review the district court's decision *de novo*. *McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015).

II.

Lackie contends that the Corps's revocation of his permit was arbitrary and capricious because the agreement "settles all known disputes" between the parties, including the dispute over his permit. The government counters that the record as a whole shows that the agreement settled only all disputes regarding the criminal trespass, such as responsibility for cutting trees and the amount to be paid for damage to the landscape in lieu of referral for prosecution.

The Corps contends that the agency's decision must be reviewed on the record as a whole, and we do not quarrel with the general proposition. 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). But

where the question is whether the Corps acted arbitrarily by revoking a permit in contravention of an agreement with a property owner, the agreement must be interpreted according to the applicable law. The law may limit what evidence of record is properly considered in construing a written agreement.

The agreement here was made between the United States and a private party, so the federal common law applies. *Prairie Land Holdings, LLC v. FAA*, 919 F.3d 1060, 1062 (8th Cir. 2019). When applying the federal common law to such an agreement, we generally "look to state law for guidance in defining the contours of the federal common law." *Id.* at 1062. The law of the forum state, Arkansas, applies to interpretation of this agreement. Under Arkansas law, a court construes an agreement as a whole, and gives the language of an agreement the meaning which the parties intended in light of the "the plain, ordinary meaning" of the words. *First Nat'l Bank v. Griffin*, 832 S.W.2d 816, 820 (Ark. 1992).

The agreement here states plainly that the parties "want to settle this case concerning *all* matters on the public lands," and that the agreement "settles *all known disputes* between the Corps of Engineers and the landowner, Mr. Lackie, as of the date signed." The Corps does not deny that there was at the time a dispute over Lackie's ability to retain the shoreline use permit. The project manager had informed Lackie that the Corps's project office was recommending that the District Commander revoke Lackie's permit. This put Lackie on notice that his permit was in jeopardy. Lackie then sought to retain the permit, contacted the Corps in an effort to stave off the recommended revocation, and eventually sought an informal hearing before the District Commander after receiving a notice of revocation. That situation naturally fits the definition of a dispute—a "conflict or controversy"—over Lackie's retention of the permit. *See Dispute*, *Black's Law Dictionary* (12th ed. 2024). A straightforward reading of the agreement, therefore, manifests an objective intent of the parties to settle the dispute over Lackie's permit.

-7-

The Corps contends that its transmittal letter accompanying the agreement, and Lackie's conduct after signing the agreement, show that the parties did not intend to settle the dispute over Lackie's permit. Extrinsic evidence may be used to explain the meaning of an ambiguous contractual term. *Jorja Trading, Inc. v. Willis*, 598 S.W.3d 1, 9 (Ark. 2020). But there is no ambiguity here. The capacious and unqualified language of the agreement, referring to "all matters on the public lands" and "all known disputes," unambiguously encompasses the dispute over Lackie's permit. Context does not render the phrase ambiguous. Other paragraphs in the agreement address compensation to the government and Lackie's potential liability for trespass, but they do not specify that those matters are the only subjects of the agreement. To the contrary, the preamble explains that the parties "want to settle this case concerning *all matters on the public lands*." Lackie did not execute or agree to the Corps's transmittal letter, so this is not a case like *Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1213 (8th Cir. 2012), where the court was required to construe multiple documents executed as part of a single transaction.*

Even if these extrinsic matters were properly considered in construing the agreement, they do not substantiate the Corps's position. The letter offered Lackie an option to pay the value of the damaged trees to avoid a court appearance, and explained that the project office was recommending revocation of Lackie's shoreline use permit. But the letter did not address how the proposed settlement agreement

---

*We reject the Corps's contention that Lackie may not rely on the settlement agreement because he did not "exhaust" that argument in a submission to the District Commander. The relevant statute and regulations do not require a landowner to exhaust issues before the District Commander, and the Corps did not notify Lackie that issues not specifically raised with the Commander would be forfeited in litigation. *See Sims v. Apfel*, 530 U.S. 103, 113 (2000) (O'Connor, J., concurring in part and concurring in the judgment); *Harwood v. Apfel*, 186 F.3d 1039, 1043 (8th Cir. 1999). The District Commander's consideration of a recommendation to revoke a shoreline use permit is not the sort of adversarial proceeding that might support a judicially-created exhaustion requirement. *See Carr v. Saul*, 593 U.S. 83, 88 (2021).

related to the permit. On that point, the agreement spoke for itself when it settled "all known disputes" concerning "all matters on the public lands." The Corps also suggests that Lackie would not have offered to pay an additional sum to resolve the permit dispute if he believed that the agreement had already settled it. But the Corps was then taking the position that the permit was still subject to revocation despite the settlement agreement. Lackie reasonably could have concluded that it was more efficient and cost-effective to pay another $32,000 to end the matter promptly than to retain counsel to litigate the case through the federal court system.

The Corps characterized Lackie's actions in felling the trees as an "egregious violation of the conditions of [his] shoreline use permit." In reaching our legal conclusion, we do not excuse any such conduct or express a view on what might have been an appropriate sanction for such a violation. For the reasons stated, however, we conclude that the parties reached a binding agreement to resolve "all known disputes," including the dispute over Lackie's permit. We therefore reverse the judgment of the district court, and remand with directions to set aside the Corps's decision to revoke Lackie's permit as unlawful agency action.

_____